IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIO CESAR RODRIGUEZ MARTINEZ<br><br>v.<br><br>ANDY CRUZ, et al. | :<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>No. 26-8396 |

**MEMORANDUM**

**Judge Juan R. Sánchez** **November 12, 2026**

Petitioner Julio Cesar Rodriguez Martinez brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (DHS). Rodriguez Martinez was arrested on his way to work when he was stopped by Immigration and Customs Enforcement (ICE) officers who were targeting another individual. Following the arrest, DHS initiated removal proceedings against Rodriguez Martinez and detained him under section 236 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1226. Rodriguez Martinez argues his current detention violates the INA, its implementing regulations, his due process rights under the Fifth Amendment, and the *Accardi* doctrine because he was arrested without a warrant and detained without an individualized custody determination. The Court agrees Rodriguez Martinez's detention is unlawful and will therefore grant the petition and order his immediate release.

**BACKGROUND**

Julio Cesar Rodriguez Martinez is a citizen of Mexico who has lived and worked in Montgomery County, Pennsylvania since approximately 2024. Pet. ¶ 17, Dkt. No. 1; Gov't's Ex. A at 1-2, Dkt. No. 4-1. He has no criminal history and, until this arrest, had no interactions with immigration officials. Pet. ¶¶ 3, 17; *see also* Gov't's Ex. A.

Early in the morning on November 1, 2026, Rodriguez Martinez and a coworker were stopped by ICE officers while driving to work. Pet. ¶¶ 2, 18. According to the petition, the stop occurred when an ICE vehicle rear-ended the car in which Rodriguez Martinez was a passenger about 100 feet from his house. *Id.* ¶ 18. The petition alleges ICE officers approached the car, said they were looking for someone, showed Rodriguez Martinez a photo of another individual, and asked if the person in the photo lived in the house. *Id.* Rodriguez Martinez responded that he did not know the person in the photo and the person did not live in the house. *Id.* A Form I-213 Record of Deportable/Inadmissible Alien completed after the arrest states the officers involved in the stop were conducting surveillance of a residence where they believed the individual they were targeting resided. Gov't's Ex. A at 2. The Form I-213 reports that officers initiated the stop after observing "an individual matching the physical description of [the target]"[1] exit the residence and enter a vehicle parked behind it, where he was joined by "a second male . . . from the opposite side of the alley." *Id.* The Government represents Rodriguez Martinez was the individual whom officers believed to be the target but that during the stop, they determined he was not the target. Gov't's Resp. 1, Dkt. No. 4.

During the encounter, the officers asked Rodriguez Martinez for his name and identification. Pet. ¶ 18; Gov't's Ex. A at 2. They also performed a facial scan using a cell phone and searched his backpack. Pet. ¶ 18; Gov't's Ex. A at 2. The Form I-213 states that a records check and facial scan showed "no results in ICE databases for legal entries or status in the United States," and no work authorization or registration with immigration officials. Gov't's Ex. A at 2. The Form I-213 also reports that in response to the officers' questions, Rodriguez Martinez stated

[1] The Form I-213 contains no description of either Rodriguez Martinez or the target and does not explain how Rodriguez Martinez matched the target's description.

he was a citizen of Mexico and had entered the United States via the southern border two years earlier. *Id.* Based on this information, the officers took Rodriguez Martinez into custody, handcuffed him, and transported him to the ICE field office in Philadelphia for processing. Pet. ¶ 18; Gov't's Ex. A at 3. The Government represents that when Rodriguez Martinez was arrested, he was served with a handwritten warrant prepared in the field.[2] Gov't's Resp. 2; *see also* Gov't's Ex. A at 3. Rodriguez Martinez disputes the Government's version of events. Pet. ¶¶ 2, 18; Pet'r's Reply 2, Dkt. No. 5.

At the field office, immigration officers served Rodriguez Martinez with a Notice to Appear[3] charging him as subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled." Gov't's Ex. B, Dkt. No. 4-2; *see also* Gov't's Ex. A at 4. Rodriguez Martinez was also served with a separate Form I-200 Warrant for Arrest of Alien and a Notice of Custody Determination indicating that he would be detained pursuant to 8 U.S.C. § 1226(a) pending his removal proceedings. Gov't's Ex. C, Dkt. No. 4-3; Gov't's Ex. D, Dkt. No. 4-4. The Notice to Appear and Notice of Custody Determination indicate Rodriguez Martinez refused to sign either form and declined to exercise his right to request review of the custody determination by an immigration judge. Gov't's Ex. B; Gov't's Ex. D. Rodriguez Martinez was then taken to the Federal Detention Center (FDC) in Philadelphia, where he is currently detained. Pet. ¶¶ 4, 19-20.

---

[2] The handwritten warrant is not included in the record currently before the Court, though the Government represents a copy can be obtained and provided, if necessary. Gov't's Resp. 2 n.1. The Form I-213 states that after Rodriguez Martinez was handcuffed, "he was served a digital copy of his warrant for arrest," Gov't's Ex. A at 3, but provides no further explanation.

[3] *See Niz-Chavez v. Garland*, 593 U.S. 155, 163 (2021) (noting a notice to appear is a "case-initiating pleading[]," akin to "an indictment in a criminal case [or] a complaint in a civil case" (alteration in original) (citation omitted)).

On November 3, 2026, Rodriguez Martinez filed the instant habeas petition, seeking release on the grounds that his arrest without a warrant and detention without an individualized custody determination violate the INA, its implementing regulations, his procedural and substantive due process rights, and/or the *Accardi* doctrine. The Government maintains Rodriguez Martinez is not entitled to relief because he is lawfully detained under 8 U.S.C. § 1226(a), in accordance with the Third Circuit's decision in *Buele Morocho v. Warden Philadelphia FDC*, 189 F.4th 287 (3d Cir. 2026), and has not exhausted administrative remedies.

**DISCUSSION**

Rodriguez Martinez is detained under § 1226(a), which provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(a) "establishes a discretionary detention framework" whereby the Attorney General "'may continue to detain' a noncitizen or 'may release' the noncitizen on bond or conditional parole." *Dos Reis v. McShane*, No. 26-3775, 2026 WL 1746649, at *4 (E.D. Pa. June 17, 2026) (quoting 8 U.S.C. § 1226(a)); *see also Buele Morocho*, 189 F.4th at 292 ("§ 1226(a) permits discretionary release on bond pending removal proceedings so long as the noncitizen is not a danger or flight risk").

The Government maintains § 1226(a) conditions its discretionary ability to detain only on the noncitizen being charged as removable. It further argues that having been so charged, Rodriguez Martinez should not be permitted to circumvent the administrative process by seeking habeas relief rather than availing himself of the administrative remedies available to him. The Court disagrees.

First, insofar as the Government argues the petition should be denied on exhaustion grounds, this Court has previously recognized "[e]xhaustion under § 2241 is . . . prudential" and

may be excused "if 'administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury.'" *Dos Reis*, 2026 WL 1746649, at *3 (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)). Although courts in this district are divided on the issue, this Court and numerous others have held exhaustion is excused for petitioners challenging their detention on the same grounds advanced by Rodriguez Martinez. *See, e.g.*, *Maldonado Nandi v. Jamison*, No. 26-7633, 2026 WL 3151303, at *2 (E.D. Pa. Oct. 21, 2026) (excusing exhaustion as to a claim regarding detention pursuant to an unlawful warrantless arrest on the ground a later bond hearing would be "'futile' and 'inadequate to prevent irreparable injury' because the hearing provides no opportunity to contest [the] arrest"); *Dos Reis*, 2026 WL 1746649, at *3 (finding petitioner need not exhaust a due process challenge to his detention under § 1226(a) without an individualized custody determination because (1) petitioner "challenge[d] the legality of the initial deprivation of liberty" and "[a] later bond hearing does not necessarily cure the alleged constitutional violation that preceded it" and (2) the administrative remedy of a bond hearing was not presently available while petitioner was detained at the FDC, which "does not facilitate virtual hearings for ICE detainees"). The Court finds exhaustion is excused here.

Second, Rodriguez Martinez's detention is unlawful because he was not arrested pursuant to a valid warrant. As noted, § 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings "[o]n a warrant." *See Tabora-Brizuela v. Mullin*, No. 26-7010, 2026 WL 2908095, at *2 (E.D. Pa. Sept. 28, 2026) (recognizing the statutory language is clear and "requires a warrant for arrest" (citation omitted)). The statute's implementing regulations provide that a noncitizen "may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest" either "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to

the time removal proceedings are completed." 8 C.F.R. § 236.1(b)(1). Courts in this district and elsewhere have interpreted these provisions to permit DHS to "arrest a non-citizen using a Form I-200 only if the Form I-200 issues *at the same time or after* DHS issues [a notice to appear]." *Vasquez Cruz v. Jamison*, No. 26-7784, 2026 WL 3182469, at *3 (E.D. Pa. Oct. 23, 2026) (quoting *Lopez-Lopez v. Jamison*, No. 26-7618, 2026 WL 3094744, at *3 (E.D. Pa. Oct. 16, 2026)); *see also Garcia Arevalo v. Jamison*, No. 26-7971, 2026 WL 3218224, at *4 (E.D. Pa. Oct. 27, 2026) ("[A] Form I-200 warrant is invalid unless issued at or after the issuance of a notice to appear."); *Reyes Navarro v. Jamison*, No. 26-7095, 2026 WL 3073228, at *2 (E.D. Pa. Oct. 2, 2026).

The parties dispute whether a warrant was issued at the time of Rodriguez Martinez's arrest. But even if "[a] handwritten warrant was prepared in the field and served on Petitioner at the time of arrest," as the Government represents, Gov't's Resp. 2, the warrant was invalid because the Notice to Appear was issued only after Rodriguez Martinez was arrested. *See id.* (noting Rodriguez Martinez was served with a Notice to Appear "[d]uring the processing of his arrest and detention" at the ICE field office). Notably, the Form I-200 warrant served on Rodriguez Martinez after his arrest lacks an immigration file number and indicates he was arrested based on statements he made to an immigration officer—not the execution of a charging document to initiate removal proceedings against him. Gov't's Ex. C. Because the arrest warrant was issued before the Notice to Appear, it is invalid and cannot justify his detention. *Vasquez Cruz*, 2026 WL 3182469, at *4 (holding a petitioner arrested based on a handwritten Form I-200 warrant executed at the scene of the arrest, before a notice to appear was issued, was subjected "to an unlawful arrest based on an invalid warrant"); *see also Chub Coc v. Jamison*, No. 26-8177, 2026 WL 3270087, at *4 (E.D. Pa. Oct. 30, 2026) (same); *Garcia Arevalo*, 2026 WL 3218224, at *4 (same); *Lopez-Lopez*, 2026 WL 3094744, at *4 (same, collecting cases).

Absent a valid arrest warrant, Rodriguez Martinez's detention "would have to be justified by a valid warrantless arrest" under 8 U.S.C. § 1357(a)(2). *Reyes Navarro*, 2026 WL 3073228, at *2. That provision grants ICE officers "limited authority to make warrantless arrests," where the officer has "reason to believe that the noncitizen is violating certain immigration laws or regulations *and* 'is likely to escape before a warrant can be obtained.'" *Tabora-Brizuela*, 2026 WL 2908095, at *2 (emphasis added) (quoting 8 U.S.C. § 1357(a)(2)). Courts have interpreted the "reason to believe" standard as "equivalent to 'probable cause.'" *Id.* (quoting *Lee v. INS*, 590 F.2d 497, 500 (3d Cir. 1979)). The Court need not address whether ICE officers had probable cause to believe Rodriguez Martinez was violating the immigration laws because nothing in the record suggests the officers had reason to believe he was likely to escape before a warrant could be obtained when they arrested him. *See id.* ("The probable cause analysis turns on what the arresting officer knew at the time they took the individual into custody.").

At most, the Form I-213 reflects that at the time of the arrest, ICE officers knew Rodriguez Martinez was not the individual they were targeting, knew his name and date of birth, and knew he was a citizen of Mexico who entered the United States two years earlier and lacked work authorization or any form of registration with immigration officials. Gov't's Ex. A at 2-3; *see also* Gov't's Resp. 1-2. But these facts do not provide reason to believe Rodriguez Martinez would be likely to escape before a warrant could be obtained, especially where nothing in the record contradicts Rodriguez Martinez's assertion that he complied fully with officers' requests during the stop and did not try to flee. *See Vasquez Cruz*, 2026 WL 3182469, at *5 (holding reliance on a noncitizen's failure to make his illegal entry to and presence in the United States known to immigration authorities as a basis to deem him a flight risk comes "uncomfortably close to endorsing the unlawful practice of basing warrantless arrests on removability alone"); *Maldonado*

*Nandi*, 2026 WL 3151303, at *3 (holding that finding a noncitizen was likely to escape "simply by virtue of his unlawful status" would "render the limitations on warrantless arrest created by 8 U.S.C. §§ 1226(a) and 13579a) meaningless"). Indeed, the Government's contention that officers prepared a handwritten warrant in the field and served it on Rodriguez Martinez at the time of arrest confirms officers "did *not* intend to proceed with a warrantless arrest pursuant to Section 1357(a)(2)." *Lopez-Lopez*, 2026 WL 3094744, at *6 (emphasis added).

Finally, Rodriguez Martinez's detention is unlawful is that ICE did not make the individualized custody determination required under § 1226(a)'s discretionary detention framework. This Court previously recognized in *Dos Reis* that § 1226(a) and its implementing regulations provide for an initial custody determination by an authorized immigration officer, which may be reviewed by an immigration judge at a bond hearing with the right of appeal to the Board of Immigration Appeals. *Dos Reis*, 2026 WL 1746649, at *4 (quoting 8 U.S.C. § 1226(a)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492-93 (S.D.N.Y. 2025) The initial custody determination requires ICE to make "'an individualized determination as to . . . whether the noncitizen is a danger to property or persons and is likely to appear for any future proceedings.'"[4] *Dos Reis*, 2026 WL 1746649, at *4 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 493). The Court also concluded continued detention without the required individualized custody determination violates the noncitizen's right to procedural due process. *Id.* at *5. The Court's analysis in *Dos Reis* applies equally here.

---

[4] Numerous other courts in this district have also concluded § 1226(a) and its implementing regulations require an individualized custody determination. *See Michilashvili v. Jamison*, No. 26-7686, 2026 WL 3182160, at *2 n.2 (E.D. Pa. Oct. 23, 2026) (collecting cases).

There is no indication in the record that ICE made an individualized custody determination. Sometime after Rodriguez Martinez was arrested, an authorized officer completed a Form I-286 Notice of Custody Determination for him. Gov't's Ex. D. But as in *Dos Reis*, "[t]he Form I-286 simply reflects that Petitioner is 'Detained' with no explanation or reasoning as to why the authorizing officer made that determination." 2026 WL 1746649, at *4; *see* Gov't's Ex. D. The Form I-213 likewise provides no explanation, stating only that Rodriguez Martinez is subject to the President's January 20, 2025 "Executive Order titled, 'Protecting the American People Against Invasion," and "will be detained without bond at this time." Gov't's Ex. B at 4. The Form I-213 includes no information suggesting ICE perceived Rodriguez Martinez to be a danger or a flight risk. On this record, the Court concludes Rodriguez Martinez's continued detention violates both the INA and his procedural due process rights. *See Dos Reis*, 2026 WL 1746649, at *5.

**CONCLUSION**

Accordingly, the Court will grant Rodriguez Martinez's petition for writ of habeas corpus and order his immediate release. An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.